1   Taras P. Kick (State Bar No. 143379)
    (taras@kicklawfirm.com)
2   Graig R. Woodburn (State Bar No. 134097)
    (graig@kicklawfirm.com)
3   Matthew E. Hess (State Bar No. 214732)
    (matthew@kicklawfirm.com)
4   Thomas A. Segal (State Bar No. 222791)
    (thomas@kicklawfirm.com)
5   THE KICK LAW FIRM, APC
    900 Wilshire Blvd., Suite 230
6   Los Angeles, California 90017
    (213) 624-1588; Fax (213) 624-1589
7
    Counsel for Plaintiff WINEESA COLE
8

9                    **UNITED STATES DISTRICT COURT**

10                   **CENTRAL DISTRICT OF CALIFORNIA**

11

12  | Wineesa Cole, individually and on behalf of all others similarly situated, | Case No. CV-06-6649-PSG (JCx) |
13  |  |  |
    | | Honorable Philip S. Gutierrez |
14  | Plaintiff, | |
    | | **NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES** |
15  | v. | |
16  | | **[REDACTED]** |
17  | Asurion Corporation, a Delaware Corporation, Asurion Insurance Services, Inc., a Tennessee Corporation, T-Mobile USA, Inc., a Delaware Corporation, Liberty Mutual Insurance Company, a Massachusetts Corporation, and DOES 1 through 500. | **Date:** February 22, 2010 |
18  | | **Time:** 8:30 a.m. |
    | | **Ctrm.:** 790 |
19  | | |
20  | | |
21  | Defendants. | |

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

# NOTICE OF MOTION

TO THE COURT AND TO ALL PARTIES OF RECORD:

PLEASE TAKE NOTICE THAT ON February 22, 2010, at 1:30 p.m., or as soon thereafter as counsel can be heard in the Courtroom 790 of the of the United States District Court for the Central District of California, located at 255 East Temple Street, Los Angeles CA 90012, Plaintiff Wineesa Cole shall appear before the Hon. Philip S. Gutierrez, United States District Judge, and bring her motion for class certification.

# MOTION

Plaintiff Wineesa Cole hereby requests, pursuant to Fed.R.Civ.Proc. 23(b)(3) and 23(c)(1)(A), that the Court certify this matter to proceed as a class action. Pursuant to Fed.R.Civ.Proc. 23(c)(1)(B), Plaintiff requests that the Court certify the following classes:

**1.     Class No. 1**

All persons who while residing in the State of California purchased cellular telephone insurance from Asurion through T-Mobile USA from August 1, 2003 to April 2, 2008.

**2.     Class No. 2**

All persons who while residing in the State of California were switched on July 1, 2005 from a T-Mobile cell phone insurance policy underwritten by The Hartford to a T-Mobile cell phone insurance policy underwritten by Liberty Mutual with a monthly premium of $5.99, and a deductible of $110, and paid a premium at any time between July 1, 2005 and August 2, 2006.

Finally, pursuant to Fed.R.Civ.Proc. 23(g), Plaintiff Cole asks that she be appointed as the class representative, and that The Kick Law Firm, APC, be appointed as class counsel.

1    This motion is based on this notice of motion and motion; the attached
2    memorandum of points and authorities; the Declaration of Taras Kick, the pleadings
3    and papers on file; and such other evidence and argument as may be presented to the
4    Court prior to or at the hearing on this matter.

5

6    This motion is made following the conference of counsel pursuant to L.R. 7-3
7    which took place on November 24, 2009.

8

9    Dated: December 20, 2009                    THE KICK LAW FIRM, APC

10                                                /s/ Matthew E. Hess
                                          By: _____
11                                               Taras P. Kick, Esq.
12                                               Matthew E. Hess, Esq.
                                                 Thomas A. Segal, Esq.
                                                 Attorneys for Plaintiff,
13                                               Wineesa Cole

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR CLASS CERTIFICATION

1

# TABLE OF CONTENTS

2   I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3   II.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

4         A.    Defendants' Common Course of Material Omissions . . . . . . . . . . . 3

5         B.    Defendants' Unlicensed Sale of Insurance . . . . . . . . . . . . . . . . . . . . 3

6         C.    Defendants' Breach of the Covenant of Good Faith and
7               Fair Dealing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    III.  LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
8
          A.    General Rule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
9
                1.    Rule 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
10
                2.    Rule 23(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
11
          B.    The District Court's Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
12
    IV.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
13
          A.    The Requirements of Rule 23(a) Are Satisfied . . . . . . . . . . . . . . . . . 6
14
                1.    Numerosity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
15
                2.    Commonality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
16
                      a.    Misrepresentation-Based Claims –
17                          Counts 1, 2, 4, 5, and 6 . . . . . . . . . . . . . . . . . . . . . . . . 8

18                          i.     Proposed Misrepresentation Class . . . . . . . . . . . . 8

19                          ii.    UCL Claims - Counts 1 and 2 . . . . . . . . . . . . . . . 9

20                                 (a.)   Elements of the Cause of Action . . . . . . . . 9

21                                        (i.)    Fraudulent . . . . . . . . . . . . . . . . . . . . 9

22                                        (ii.)   Unlawful . . . . . . . . . . . . . . . . . . . 10

23                                        (iii.)  Unfair . . . . . . . . . . . . . . . . . . . . . . 10

24                          iii.   Common-Law Fraud . . . . . . . . . . . . . . . . . . . . 10

25                          iv.    Plaintiff's Misrepresentation Claims Are Based
                                   on a Common Course of Conduct . . . . . . . . . . . 12
26
                                   (a.)   Ms. Cole Purchases Asurion's Insurance   12
27
                                   (b.)   The Preprinted Brochure . . . . . . . . . . . . . 13
28
                                   (c.)   Material Omissions from The Brochure  . 14

i

---

MOTION FOR CLASS CERTIFICATION

1

**REDACTED**

2

3
      b.    Policy-Switching Class - Counts 2, 3, 5, 6 and 9 . . . . . 17

4
           i.    Proposed Policy-Switching Class . . . . . . . . . . . 18

5
           ii.    Unlicensed Sale of Insurance - Count 3 . . . . . . . 18

6
           iii.   Misuse of Discretionary Power - Counts 2, 5, 6, and 9 . . . . . . . . . . . . . . . . . . . . . 19

7
   3.   Typicality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

8
   4.   Adequacy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

9
      a.   There are No Conflicts of Interest . . . . . . . . . . . . . . . . 21

10
      b.   Ms. Cole and Counsel Will Vigorously Litigate the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

11
B.   The Requirements of Rule 23(b)(3) Are Satisfied . . . . . . . . . . . . . . 22

12
   1.   Common Questions Predominate Over Individual Questions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

13

14
   2.   A Class Action Is Superior to Other Forms of Litigation . . . 23

15
V.   IF THE COURT GRANTS CERTIFICATION IT SHOULD CONTINUE THE TRIAL TO ALLOW TIME FOR NOTICE

16
TO BE SENT OUT, OR SEND NOTICE POST-TRIAL. . . . . . . . . . . . . 24

17
VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR CLASS CERTIFICATION

1      TABLE OF AUTHORITIES

2              Federal Rules

3   Fed. R. Civ. P. 23(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, 8, 20

4   Fed. R. Civ. P. 23(b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 22, 23, 25

5              State Statutes

6   Cal. Bus. & Prof. C. § 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8, 9, 10, 18, 20

7   Cal. Insurance Code § 1758.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22, 24

8   Cal. Insurance Code § 1758.62(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

9              Federal Cases

10  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997) . . . . . . . . . . . . . . . . 10

11  Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir. 2001)  . . . . . . . . . . . . . . . . 5, 6, 7

12  Blackie v. Barrack, 524 F.2d 891, 901 n. 17 (9th Cir. 1975) . . . . . . . . . . . . . . . . 6

13  California Rural Legal Assistance, Inc. v. Legal Services Corp.,
14      917 F.2d 1171, 1175 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

15  Crawford v. Honig, 37 F.3d 485, 487 (9th Cir. 1995)  . . . . . . . . . . . . . . . . . . . 21

16  Davis v. Southern Bell Telephone & Telegraph Co.,
        158 F.R.D. 173, 176 (S.D. Fla. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

17  Eisen & Carlisle v. Jacqueline, 417 U.S. 156, 177-78 (1974) . . . . . . . . . . . . . . . 6

18  Esplin v. Hirschi, 402 F.2d 94, 97 (10th Cir. 1968) . . . . . . . . . . . . . . . . . . . . . 6

19  Fletcher v. Security Pacific National Bank, 23 Cal.3d 442, 453 (1979) . . . . . . . . . 9

20  General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 157 (1982) . . . . . . . . . . 21

21  Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981)  . . . . . . . . . . . . . . . . . . . . . . . 6

22  Hanlon v. Chrysler Corp.,
23      150 F.3d 1011, 1019 (9th Cir. 1998) . . . . . . . . . . . . . . . . 7, 13, 20, 22, 24, 25

24  Heastie v. Community Bank of Greater Peoria,
        125 F.R.D. 669 (N.D. Ill. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

25  Hubler Chevrolet v. General Motors Corp.,
26      193 F.R.D. 574, 580 (S.D.Ind. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

27  Immigrant Assistance Project of Los Angeles County
        Federation of Labor v. I.N.S., 306 F.3d 842, 869 (9th Cir. 2002) . . . . . . . . . 7

28  In re American Continental Corp./Lincoln Savings & Loan Securities Litigation, 140
    F.R.D. 425, 430 (D. Ariz. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

iii

1  In re First Alliance Mortgage Co., 471 F.3d 977 (9th Cir. 2006) . . . . . . . . . 7, 10-12

2  In re Memorex Securities Cases, 61 F.R.D. 88, 94 (N. D. Cal. 1973) . . . . . . . . . . 6

3  In re Prudential Insurance Co. Of America, 148 F.3d 283, 314 (3d Cir. 1998) . . 11

4  In re Unioil Securities Litigation, 107 F.R.D. 615, 618. (C.D. Cal. 1985) . . . . . . 6

5  Jordan v. County of Los Angeles, 669 F.2d 1311, 1319 n.10 (9th Cir. 1982) . . . . . 7

6  Kennedy v. Tallant, 710 F.2d 711, 717 (11th Cir. 1983) . . . . . . . . . . . . . . . . . . 11

7  Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . 21

8  Negrete v. Allianz Life Insurance Co. of North America,
       238 F.R.D. 482 (C.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
9
   Peterson v. H & R Block Tax Services, 174 F.R.D. 78 (N.D. Ill. 1997) . . . . . . . 11
10
   Postow v. OBA Federal Savings & Loan Association,
11       627 F.2d 1370, 1382-1383 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . 25

12  Schaefer v. Overland Express Family of Funds,
        169 F.R.D. 124, 130 (S.D. Cal. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . )11
13
   Snaur v. Snappy Apple Farms,
14       203 F.R.D. 281, 284 (W.D. Mich. 2001) . . . . . . . . . . . . . . . . . . . . . . . 24, 25

15  Stanich v. Travelers Indemnity Co., 249 F.R.D. 506 (N.D. Ohio 2008) . . . . . . . 11

16  Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . 21

17  Stolz v. United Brotherhood of Carpenters,
        620 F.Supp. 396, 402 (D. Nev. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
18
   Zinser v. Accufix Research Institute,
19       253 F.3d 1180, 1186 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

20                                     State Cases

21  Acree v. GMAC, 92 Cal.App.4th 835, 108-109 (2001) . . . . . . . . . . . . . . . . . . . . 19

22  Badie v. Bank of America, 67 Cal.App.4th 779, 796 (1998) . . . . . . . . . . . . . . . . 19

23  Bank of the West v. Superior Court, 2 Cal.4th 1254, 1267 (1992) . . . . . . . . . . . . 9

24  Committee on Children's Television, Inc. v. General Foods Corp.,
        35 Cal.3d 197, 211 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
25
   Conroy v. Regents of University of California, 45 Cal.4th 1244 (2009) . . . . . . . 10
26
   Foley v. Interactive Data Corp., 47 Cal.3d 654 (1988) . . . . . . . . . . . . . . . . . . . . 19
27
   In re Tobacco II Cases , 46 Cal.4th 298, 320 (2009) . . . . . . . . . . . . . 2, 3, 9, 10, 12
28
   Kasky v. Nike Inc., 27 Cal.4th 939, 951 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

MOTION FOR CLASS CERTIFICATION

Lazar v. Superior Court, 12 Cal.4th 631, 638 (1996) . . . . . . . . . . . . . . . . . . . . . . 10

Massachusetts Mutual Life Insurance Co. v. Superior Court,
    97 Cal.App.4 at 1282, 1294 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Saunders v. Superior Court, 27 Cal.App.4th 832 (1994) . . . . . . . . . . . . . . . 10, 18

Small v. Fritz Companies. Inc., 30 Cal.4th 167, 173 (2003) . . . . . . . . . . . . . . . . 10

State Farm Fire & Cas. Co. v. Superior Court, 45 Cal.App.4th 103, 1104 . . . . . . 10

Vasquez v. Superior Court, 4 Cal.3d 800, 814 (1971) . . . . . . . . . . . . . . . . . . . . . 12

Other Authorities

1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*
    §3.10 at 274-278 (4th Ed. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

MOTION FOR CLASS CERTIFICATION

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3          The cellular telephone insurance marketed to consumers by Defendants Asurion

4    Corp., Asurion Insurance Services, Inc. (collectively, "Asurion") and T-Mobile USA,

5    Inc. ("T-Mobile") purports to permit Asurion to fulfill claims with "refurbished"

6    telephones instead of new telephones. "Refurbished" telephones are manufactured

7    from parts salvaged from telephones that were returned as damaged or defective.

8    Between 50% and 75% of the phones Asurion ships to its customers are "refurbished."

9    Declaration of Matthew E. Hess ("Hess Decl."), ¶ 5. Exh. D.

10                                    **REDACTED**

11         Moreover, Asurion's insurance purports to give it the right to fulfill claims with

12   replacement telephones that are of a different make and model. In other words, if a

13   customer loses his Blackberry, Asurion may send him an iPhone as a replacement.

14                                    **REDACTED**

15         Plaintiff Wineesa Cole purchased a T-Mobile telephone, and Asurion's cellular

16   telephone insurance on April 19, 2004 in Torrance, California. At the time, Ms. Cole

17   was working as a secretary for Nissan North America. Cole Dep., p. 9:6-15. The sales

18   representative who dealt with Ms. Cole, "Ricky," used Asurion's standardized sales

19   script to describe the insurance to her. He then showed Ms. Cole a copy of Asurion's

20   standardized, preprinted brochure and directed her attention to the premium,

21   deductible, and limit of coverage in the brochure, and nothing else. Ms. Cole then

22   agreed to purchase the insurance. Cole Dep., pp. 40:5-18, 79:22-25 - 89:21-24.

23         Thereafter, in July 2005, Asurion tripled Ms. Cole's deductible from $35 to

24   $110 and raised her premium from $3.99 to $5.99 when it switched the underwriter

25   of the policy from Hartford to Liberty Mutual. At the time of the policy switch, neither

26   Asurion nor T-Mobile was licensed to transact business for Liberty Mutual.

27                                    **REDACTED**

28   further, those facts are not highlighted in its brochure. Ms. Cole testified that had she

                                          1

1  been informed of these facts, she would not have purchased the insurance. Cole Dep.,

2  p. 89:2-18. On December 1, 2009, this Court held that there are triable issues of fact

3  as to whether Asurion adequately disclosed the material terms of its insurance. Hess

4  Decl., ¶ 9 Exh. H.

5      In the landmark decision of In re Tobacco II Cases, 46 Cal.4th 298 (2009), the

6  California Supreme Court recently explained that a class action may be certified under

7  California's Unfair Competition Law (UCL) if it is based on a "common course of

8  conduct" that is "likely to deceive" consumers. Id. Only the class representative need

9  show reliance on the misrepresentations or omissions; the absent class members need

10 not show this on an individualized basis. Id. ("[R]elief under the UCL is available

11 without individualized proof of deception, reliance and injury.") In other words, as the

12 California Supreme Court explained, for the absent class members "[i]t is necessary

13 only to show that 'members of the public are likely to be deceived.'" Tobacco II, 46

14 Cal.4th at 311. As such, this case is ideally suited for certification.

15     Class certification of Ms. Cole's UCL claims is appropriate under Tobacco II

16 because all which remains to be demonstrated in this case is the common question of

17 whether under Asurion's promotional practices for its cell phone insurance,

18 "members of the public were likely to be deceived." Tobacco II, 46 Cal.4th at 311.

19 The policy switching claims are equally appropriate for certification since they were

20 group policies under which all insureds were switched from one policy to the other at

21 one time. This motion therefore seeks certification of the UCL claims, as well as the

22 other claims as described below.

23 **II.    STATEMENT OF FACTS**

24     **A.    Defendants' Common Course of Material Omissions**

25                             **REDACTED**

26  Ms. Cole was not informed that she may receive a refurbished phone, a phone of a

27 different make and model, or a phone worth less than the amount of the deductible,

28 and those facts are not highlighted in Asurion's brochure. Hess Decl., ¶ 2, Exh. A.

**B. Defendants' Unlicensed Sale of Insurance**

Next, the evidence will show that on July 1, 2005, Asurion and T-Mobile began selling insurance on behalf of the Liberty Mutual Insurance Co. **when they were not licensed to do so**. Hess Decl., ¶¶ 10-11, Exhs. I-J. Specifically, it is undisputed that on July 1, 2005, Asurion and T-Mobile switched all of their existing customers from a policy underwritten by The Hartford to a new policy underwritten by Liberty Mutual, when neither was licensed to transact business on behalf of Liberty Mutual. Asurion then used this policy switch as an excuse to raise Plaintiff's deductible from $35 to $110 (for a phone for which she paid $100), and to raise her premium from $3.99 per month to $5.99. Hess Decl., ¶ 12, Exh. K; Cole Dep., p. 54:2-6. The claims arising from these facts are suited for class treatment; each and every customer who on July 1, 2005 was switched to a Liberty Mutual when T-Mobile was not licensed to transact business on behalf of Liberty Mutual.

**C. Defendants' Breach of the Covenant of Good Faith and Fair Dealing**

**REDACTED**

This policy "switch" is especially apropos for class treatment because the Hartford and Liberty Mutual policies were group policies which named T-Mobile as the insured and T-Mobile's subscribers as "additional insureds." Therefore, on July 1, 2005, each and every T-Mobile customer enrolled in the Hartford program was automatically enrolled in the Liberty Mutual program. Asurion Dep. (Schneider), p. 386:6-15. Because all of T-Mobile's customers were switched *en masse*, on July 1, 2005, claims arising from these facts are likewise ideally suited for class treatment.

**III. LEGAL STANDARD**

**A. General Rule**

Class actions are governed by Federal Rule of Civil Procedure 23. A party seeking class certification must satisfy the four element test set forth in Rule 23(a), and then show that the case fits into any one of the three categories of class action recognized by Rule 23(b). Zinser v. Accufix Research Institute, 253 F.3d 1180, 1186

1    (9th Cir. 2001), *as amended*, 273 F.3d 1266 (9th Cir. 2001).

2    **1.**    <u>**Rule 23(a)**</u>

3    Rule 23(a) provides that a class will be certified if a plaintiff can establish that:

4    (1) the class is so numerous that joinder of all members is impracticable; (2) there are

5    questions of law or fact common to the class; (3) the claims or defenses of the

6    representative parties are typical of the claims or defenses of the class; and (4) the

7    representative parties will fairly and adequately protect the interests of the class. In

8    this case, all four requirements are easily satisfied.

9    **2.**    <u>**Rule 23(b)**</u>

10    After a plaintiff has established that a matter is suitable for class treatment

11    under Rule 23(a), the plaintiff must then show that the class falls within one of the

12    three categories of class action recognized by Rule 23(b). <u>Zinser</u>, 253 F.3d at 1186.

13    Here, Plaintiff is moving for certification pursuant to Rule 23(b)(3), which

14    states that "a class action may be maintained if Rule 23(a) is satisfied and if . . .[t]he

15    court finds that the questions of law or fact common to class members predominate

16    over any questions affecting only individual members, and that a class action is

17    superior to other available methods for fairly and efficiently adjudicating the

18    controversy." <u>Id.</u>

19    As will be shown below, the proposed class in this case falls squarely within

20    Rule 23(b)(3), because common questions of law and fact clearly predominate, and

21    a class action is inarguably superior to other available methods for fairly and

22    efficiently adjudicating the controversy.

23    **B.**    <u>**The District Court's Analysis**</u>

24    In deciding a motion for class certification, the Court must assume the truth of

25    the substantive allegations of plaintiff's complaint. *See* <u>Eisen & Carlisle v. Jacqueline</u>,

26    417 U.S. 156, 177-78 (1974); <u>In re Unioil Securities Litigation</u>, 107 F.R.D. 615, 618.

27    (C.D. Cal. 1985). "[T]he court is bound to take the substantive allegations of the

28    complaint as true, thus necessarily making the class order speculative . . ." <u>Blackie v.</u>

1 Barrack, 524 F.2d 891, 901 n. 17 (9ᵗʰ Cir. 1975), *cert. denied*, 429 U.S. 816 (1976).

2       The Court's decision to grant class certification lies within its sound discretion.

3 *See* Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981). However, "[i]f there is to be an

4 error made, let it be in favor and not against the maintenance of the class action. . . ."

5 In re Memorex Securities Cases, 61 F.R.D. 88, 94 (N. D. Cal. 1973) (citing Esplin v.

6 Hirschi, 402 F.2d 94, 97 (10ᵗʰ Cir. 1968)).

7 **IV.  ARGUMENT**

8       It is respectfully submitted that this case should be certified as a class action for

9 each of the following reasons:

10      **A.  The Requirements of Rule 23(a) Are Satisfied**

11       Plaintiff's proposed classes satisfy all four threshold requirements of Rule

12 23(a): "numerosity," "commonality," "typicality," and "adequacy."

13         **1.  Numerosity**

14       The first requirement for class certification under Rule 23(a) is that is that the

15 class be "so numerous that joinder of all members is impracticable." Fed.R.Civ.Proc.

16 23(a)(1). The Ninth Circuit has consistently held that the "numerosity" requirement

17 is easily satisfied and has certified classes with as few as forty members. Immigrant

18 Assistance Project of Los Angeles County Federation of Labor v. I.N.S., 306 F.3d

19 842, 869 (9ᵗʰ Cir. 2002). *See also* Jordan v. County of Los Angeles, 669 F.2d 1311,

20 1319 n.10 (9ᵗʰ Cir. 1982) (discussing thirteen reported cases in which courts have

21 certified plaintiff classes containing as few as seven and as many as 78 members.)

22       On December 2, 2009, Defendants produced a list containing the name, address,

23 and telephone number of every T-Mobile customer in the United States who was

24 allegedly sent a letter by Asurion notifying them of the switch in underwriters from

25 Hartford to Liberty Mutual. The list spans 47,625 Bates-numbered pages. The names

26 on this list with California addresses are class members. After examining a sample of

27 just 1,869 Bates-numbered pages, Plaintiff determined that at least 30,750 California

28 residents were allegedly sent the policy-switching letter. Hess Decl., ¶ 14, Exh. M.

5

1    Accordingly, the number of class members more than satisfies the numerosity
2    requirement.

3              **2.    Commonality**

4              "Rule 23(a)(2) has been construed permissively. All questions of fact and law
5    need not be common to satisfy the rule. The existence of shared legal issues with
6    divergent factual predicates is sufficient, as is a common core of salient facts coupled
7    with disparate legal remedies within the class." Hanlon v. Chrysler Corp., 150 F.3d
8    1011, 1019 (9th Cir. 1998).

9              Nor does "common," as used in Rule 23(a)(2), mean "complete congruence."
10   In re First Alliance Mortgage Co., 471 F.3d 977, 990 (9th Cir. 2006). It is enough to
11   satisfy commonality that plaintiffs share one common issue of law or fact and their
12   "'situations are sufficiently parallel to insure a vigorous and full presentation of all
13   claims for relief.'" California Rural Legal Assistance, Inc. v. Legal Services Corp.,
14   917 F.2d 1171, 1175 (9th Cir. 1990). *See also* 1 Herbert B. Newberg & Alba Conte,
15   Newberg on Class Actions, §3.10 at 274-278 (4th Ed. 2002) ("Rule 23(a)(2) is easily
16   met in most cases. When the party opposing the class has engaged in some conduct
17   that affects a group of persons and gives rise to a cause of action, one or more
18   elements of that cause of action will be common to all of the persons affected.")

19             Here, there are common questions of law and fact regarding all of the causes
20   of action for which Plaintiff is requesting certification, including but not limited to
21   whether the manner of selling Defendants' insurance had the capacity to deceive, and
22   whether it was lawful for Defendants to sell insurance underwritten by Liberty Mutual
23   when not licensed to do so. Damages, too, may be calculated using Defendants' own
24   records. T-Mobile Dep. (Katz), pp. 129:1-130:4.

25             **a.    Misrepresentation-Based Claims – Counts 1, 2, 4, 5, and 6**

26             Plaintiff's UCL and common-law misrepresentation claims are based on a
27   common course of conduct and therefore present common questions of law and fact
28   suitable for adjudication on a classwide basis.

1        **i.      Proposed Misrepresentation Class**

2        Plaintiff respectfully requests that the Court certify the following class with

3    respect to Counts 1, 2, 4, 5, and 6:

4        "All persons who while residing in the State of California purchased

5        cellular telephone insurance from Asurion through T-Mobile USA from

6        August 1, 2003 to April 2, 2008."

7        The start date of this class is August 1, 2003, because this is when T-Mobile

8    started selling the Asurion insurance. The end date is April 2, 2008, because this is

9    when Asurion entered into a settlement agreement with the Attorney General of

10   Maryland which required Asurion to make significant disclosure improvements to its

11   brochure, including making the disclosure that consumers may receive refurbished

12   telephones noticeable. Hess., ¶¶ 7-8, Exhs. F-G. Therefore, Plaintiff is limiting the

13   scope of her proposed misrepresentation class to California consumers who purchased

14   Asurion's insurance prior to April 2, 2008, when the improved disclosures required

15   by the Attorney General's office started. In other words, this class consists of those

16   who, like Plaintiff, received the old, inadequate disclosures.

17       **ii.     UCL Claims - Counts 1 and 2**

18       Counts 1 and 2 of Plaintiff's TAC are for violations of the fraudulent prong of

19   California's Unfair Competition Law (UCL), Cal. Bus. & Prof. C. § 17200

20       **(a.)     Elements of the Cause of Action**

21       California's UCL prohibits "any unlawful, unfair or fraudulent business act or

22   practice." Cal. Bus. & Prof. C. § 17200.

23       **(i.)     Fraudulent**

24       The "fraud" prong of the UCL only requires proof that the defendant's conduct

25   "has a capacity, likelihood or tendency to deceive or confuse the public." Kasky v.

26   Nike Inc., 27 Cal.4th 939, 951 (2002). As recently explained by the California

27   Supreme Court, even post-Proposition 64, the UCL does not require reliance by absent

28   class members or proof that any individual consumer was actually deceived:

1   "[R]elief under the UCL is available without individualized proof of

2   deception, reliance and injury. (E.g., <u>Bank of the West v. Superior Court</u>,

3   2 Cal.4th 1254, 1267 (1992); <u>Committee on Children's Television, Inc.</u>

4   <u>v. General Foods Corp.</u>, 35 Cal.3d 197, 211; <u>Fletcher v. Security Pacific</u>

5   <u>National Bank</u> 23 Cal.3d 442, 453 (1979).

6   <u>Tobacco II</u>, 46 Cal.4th at 320.

7   Once the broad dissemination of common misrepresentations to the class has

8   been established, "the ultimate question of whether the undisclosed [or affirmatively

9   misrepresented] information was material [is] a common question of fact suitable for

10  treatment in a class action." <u>Massachusetts Mutual Life Insurance Co. v. Superior</u>

11  <u>Court</u>, 97 Cal.App.4th 1282, 1294 (2002). *See also* <u>Blakemore v. Superior Court</u>, 129

12  Cal.App.4th 36, 56 (2005) (rejecting argument that the varied subjective reasons for

13  each member's conduct was relevant to liability or class certification under the UCL).

14  In its landmark <u>Tobacco II</u> decision, the Supreme Court reiterated the

15  appropriateness of UCL fraud claims for class treatment, explaining all that needs to

16  be shown is a capacity or tendency to deceive the public as opposed to any actual

17  deception of absent class members:

18  "[T]o state a claim under either the UCL or the false advertising law, based on

19  false advertising or promotional practices, 'it is necessary only to show that

20  "members of the public are likely to be deceived.'"

21  <u>Tobacco II</u>, 46 Cal.4[th] at 311. Individualized reliance on the part of class members

22  need not be shown. <u>Id.</u>

23  **(ii.)**     **Unlawful**

24  "Unlawful" business acts or practices within the meaning of the UCL "include

25  anything that can properly be called a business practice and that at the same time is

26  forbidden by law." <u>McKell v. Washington Mutual, Inc.</u>, 142 Cal.App.4th 1457, 1475

27  (2006). A violation of the law is a *per se* violation of the UCL. <u>Saunders v. Superior</u>

28  <u>Court</u>, 27 Cal.App.4th 832 (1994).

**(iii.)   Unfair**

The unfair prong of the UCL may be established by weighing "the utility of the defendant's conduct against the gravity of the harm to the alleged victim." <u>State Farm Fire & Cas. Co. v. Superior Court</u>, 45 Cal.App.4th 103, 1104.

**iii.   Common-Law Fraud**

Counts 4 and 5 of Plaintiff's TAC are for common-law intentional and negligent misrepresentation. The elements of Plaintiff's fraudulent nondisclosure claim are: (1) an omission of material fact; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) damages. <u>Lazar v. Superior Court</u>, 12 Cal.4th 631, 638 (1996); *see* <u>Small v. Fritz Companies. Inc.</u>, 30 Cal.4th 167, 173 (2003).[1]

In the leading case of <u>In re First Alliance Mortgage Co.</u>, 471 F.3d 977 (9th Cir. 2006), the Ninth Circuit explained that it favors class treatment in cases involving common misrepresentations:

> "[A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action . . .
> . **[T]his court has followed an approach that favors class treatment of fraud claims stemming from a 'common course of conduct'** . . ."

<u>Id.</u> at 989. (Emphasis added.)[2] *See also* <u>Blackie v. Barrack</u>, 524 F.2d 891, 902 (9th Cir.

---

[1] Plaintiff bears an even lighter burden on Count 5 – negligent misrepresentation – because that cause of action does not require a showing of intent to defraud. <u>Conroy v. University of California</u>, 45 Cal.4th 1244 (2009).

[2] <u>In re First Alliance Mortgage</u> is one of a long line of cases from across the country which hold that misrepresentation claims based on a common course of conduct are especially suitable for adjudication on a classwide basis. for class treatment. *See. e.g.* <u>In re Prudential Insurance Co. Of America</u>, 148 F.3d 283, 314 (3d Cir. 1998); <u>Kennedy v. Tallant</u>, 710 F.2d 711, 717 (11th Cir. 1983); <u>Davis v. Southern Bell Telephone & Telegraph Co.</u>, 158 F.R.D. 173, 176 (S.D. Fla. 1994); <u>Negrete v. Allianz Life Insurance Co. of North America</u>, 238 F.R.D. 482 (C.D. Cal. 2006); <u>Heastie v. Community Bank of Greater Peoria</u>, 125 F.R.D. 669 (N.D. Ill. 1989); <u>Schaefer v. Overland Express Family of Funds</u>, 169 F.R.D. 124, 130 (S.D. Cal. 1996); <u>Stanich v. Travelers Indemnity Co.</u>, 249 F.R.D. 506 (N.D. Ohio

9

1  1975) ("Confronted with a class of purchasers allegedly defrauded over a period of

2  time by similar misrepresentations, courts have taken the common sense approach that

3  the class is united by a common interest in determining whether a defendant's course

4  of conduct is in its broad outlines actionable, which is not defeated by slight

5  differences in class members' positions"); Harris v. Palm Springs Alpine Estates, Inc.,

6  329 F.2d 909, 914 (9th Cir. 1964).

7        Although as demonstrated below the fraud in this case followed a uniform sales

8  script, the Ninth Circuit has even rejected the notion that individualized oral

9  presentations to class members could somehow preclude class certification. Noting

10  that the proper focus is on the underlying scheme itself, the Court explained that:

11        In In re American Continental Corp./Lincoln Savings & Loan Securities

12        Litigation, 140 F.R.D. 425 (D. Ariz. 1992), the court correctly rejected

13        a 'talismanic rule that a class action may not be maintained where a fraud

14        is consummated principally through oral misrepresentations, unless those

15        representations are all but identical,' observing that such a strict standard

16        overlooks the design and intent of Rule 23. . . .**The exact wording of the**

17        **oral misrepresentations, therefore, is not the predominant issue. It**

18        **is the underlying scheme which demands attention.**"

19  First Alliance, 471 F.3d at 991 (Emphasis added and internal citations omitted.) The

20  court observed that the "scheme was built on inducing borrowers to sign documents

21  without really understanding the terms" and that the forms were used "with the

22  fraudulent intent of inducing reliance." Id. at 992. *See also* Vasquez v. Superior Court,

23  4 Cal.3d 800, 814 (1971): "The rule in this state ... is that it is not necessary to show

24  reliance upon a false representation by direct evidence. The fact of reliance upon

25  alleged false representations may be inferred from the circumstances attending the

26

27  2008); In re American Continental Corp./Lincoln Savings & Loan Securities

28  Litigation, 140 F.R.D. 425, 430 (D. Ariz. 1992); and Peterson v. H & R Block Tax
    Services, 174 F.R.D. 78 (N.D. Ill. 1997).

MOTION FOR CLASS CERTIFICATION

1  transaction which oftentimes afford much stronger and more satisfactory evidence of

2  the inducement which prompted the party."

3       Here, Plaintiff's common-law misrepresentation claims are based on a common

4  course of conduct and therefore present common questions of fact and law.

5           **iv.**    **Plaintiff's Misrepresentation Claims Are Based on a**

6                **Common Course of Conduct**

7       Here, the evidence establishes that the Ms. Cole's misrepresentation claims are

8  based on a common course of conduct and are therefore suitable for adjudication on

9  a classwide basis pursuant to <u>Tobacco II</u> and <u>First Alliance</u>.

10             **(a.)**    **Ms. Cole Purchases Asurion's Insurance**

11       As stated above, on April 19, 2004, Plaintiff Wineesa Cole purchased her a

12  cellular phone and Asurion's cellular telephone insurance. At the retailer, Ms. Cole

13  dealt with a sales representative named "Ricky." Ricky suggested that Ms. Cole

14  purchase Asurion's Equipment Protection Program. ("EPP"). Cole Dep, p. 79:22-25.

15  Ms. Cole testified that Ricky made the following statements regarding the EPP:

16      "Q.    What did he tell you about the Equipment Protection Program?

17      A.    **That it was $3.99 a month, $35 deductible. It covered my**

18            **phone if it was lost, stolen or damaged.**

19      Q.    **Did he say anything else?**

20      A.    **Huh-uh.**"

21  Cole Dep., p. 82:6-13. (Emphasis added.)

22       Ricky then pulled out a folding brochure and showed a portion of it to Ms.

23  Cole; he pointed to bullet points in the brochure which were consistent with his oral

24  representations regarding the nature of the EPP's coverage (lost, stolen, or damaged

25  equipment), premium ($3.99 per month) and deductible ($35.00). Cole Dep., pp. 83:5-

26  85:8, 89:21-24; Hess Dec., ¶ 2, Exh. A.

27       Ms. Cole testified that during the sales pitch, Ricky did **not** inform her that the

28  EPP permitted Asurion to fill claims with refurbished equipment, and he did not point

MOTION FOR CLASS CERTIFICATION

1   to any language in the brochure which explained that fact. Cole Dep., pp. 88:8-25. Ms.

2   Cole further testified that if Ricky had provided her with that information, she never

3   would have signed up for the EPP. Cole Dep., p. 89:2-18.

4                                       **REDACTED**

5                             **(b.)**    **The Preprinted Brochure**

6                                         **REDACTED**

7                           **(c.)**    **Material Omissions from The Brochure**

8        As the Court pointed out in its December 1 Order, the brochure's disclosure that

9   a consumer may receive a refurbished phone "is made in fine print, in the last column

10   of five columns of text . . ." Hess Decl., ¶ 9, Exh. H. The Court also noted that the

11   brochure does **not** disclose that a class member may receive a replacement telephone

12   that is worth less than the cost of the deductible. Id.

13                                         **REDACTED**

14        In its December 1, 2009 Order, the Court noted that "according to Plaintiff's

15   deposition testimony, the sales representative who showed her the brochure did not

16   call her attention to the language regarding use of refurbished replacement phones or

17   otherwise discuss with her that subscribers to the program could have their phones

18   replaced with refurbished ones." Hess Decl., ¶ 9, Exh. H.

19                                         **REDACTED**

20        While case law requires that there only be one issue of fact or law common to

21   the class to certify, in this case all of these issues of law and fact are common to Ms.

22   Cole and the plaintiff class.

23                         **b.**    **Policy-Switching Class - Counts 2, 3, 5, 6 and 9**

24        Defendants' policy-switching also presents common questions of material fact.

25                              **i.**    **Proposed Policy-Switching Class**

26        Plaintiff respectfully requests that the Court certify the following class:

27        "All persons who while residing in the State of California were switched

28        on July 1, 2005 from a T-Mobile cell phone insurance policy underwritten

MOTION FOR CLASS CERTIFICATION

1   by The Hartford to a T-Mobile cell phone insurance policy underwritten

2   by Liberty Mutual with a monthly premium of $5.99, and a deductible of

3   $110, and paid a premium at any time between July 1, 2005 and August

4   2, 2006."

5               **ii.      Unlicensed Sale of Insurance - Count 3**

6       Again, a violation of any other law is a *per se* violation of the UCL. Saunders

7   v. Superior Court, 27 Cal.App.4th 832 (1994). *See also* Stop Youth Addiction, Inc. v.

8   Lucky Stores, Inc., 17 Cal.4th 553, 565 (1998). Count 3 alleges that Defendants

9   violated the "unlawful" prong of the UCL by engaging in the unlicensed sale of

10  insurance. Cal. Insurance Code § 1758.6 requires wireless carriers who sell cellular

11  telephone insurance to obtain a license. Cal. Insurance Code § 1758.62(a) requires a

12  notice of appointment to be filed with the California Department of Insurance before

13  an agent may transact business on behalf of a particular insurer.

14      On July 1, 2005, Asurion and T-Mobile switched all of their existing customers

15  from a policy underwritten by The Hartford to a new policy underwritten by Liberty

16  Mutual. The policy switch was automatic; customers did not have to take any

17  affirmative action to be switched from the Hartford policy to the Liberty Mutual

18  policy. Asurion Dep. (Schneider), pp. 385:8-386:16.

19      At the time of the switch, neither Asurion nor T-Mobile had been appointed as

20  Liberty Mutual's agent, as required by Cal. Insurance Code § 1758.62(a). In other

21  words, neither defendant was licensed to transact business on behalf of Liberty Mutual.

22  Hess Decl., ¶ 10, Exh. I. Asurion was not appointed as Liberty Mutual's agent until

23  November 22, 2005, and T-Mobile was not appointed as Liberty Mutual's agent for

24  more than thirteen months – not until August 2, 2006. Hess Decl., ¶ 11, Exh. J.

25      Accordingly, Defendants engaged in a common course of conduct – the

26  unlicensed sale of insurance – from July 1, 2005 to August 2, 2006. Every existing

27  T-Mobile customer who was "switched" from Hartford to Liberty Mutual on July 1,

28  2005, and paid premiums between July 1, 2005 and August 2, 2006, was sold insurance

1    from an unlicensed agent. Therefore, Count 3 presents common issues of law and fact

2    that are perfectly suited for class treatment

3                    **iii.    Misuse of Discretionary Power - Counts 2, 5, 6,and**

4                             **9**

5        Count 9 of the TAC is for breach of contract. A covenant of good faith and fair

6    dealing is implied, by operation of law, in every contract. *See* Foley v. Interactive Data

7    Corp., 47 Cal.3d 654 (1988) ("Every contract imposes upon each party a duty of good

8    faith and fair dealing in its performance and its enforcement.")  In particular, the

9    implied covenant requires a party with discretionary power under a contract to exercise

10   that power reasonably and in good faith. Badie v. Bank of America, 67 Cal.App.4th

11   779, 796 (1998) ("Abuse of the power to specify terms is one of the judicially

12   recognized types of bad faith"); Acree v. GMAC, 92 Cal.App.4th 835, 108-109 (2001)

13   ("Although GMAC can unilaterally determine the premium refund method, that

14   decision, pursuant to the implied covenant, must be a reasonable one; legitimate

15   expectations naturally flow from this recognition.")

16                               **REDACTED**

17    Again, all of T-Mobile's customers were switched *en masse* to the newly proposed

18   Asurion program; this claim – like the others – is amenable to class treatment.

19                    **3.    Typicality**

20       The next Rule 23(a) requirement is typicality. Like the commonality

21   requirement, the typicality requirement is "**permissive**" and requires only that the

22   representative's claims be "reasonably co-extensive with those of absent class

23   members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. The

24   typicality requirement looks to whether "the claims of the class representatives [are]

25   typical of those of the class, and [is] 'satisfied when each class member's claim arises

26   from the same course of events, and each class member makes similar legal arguments

27   to prove the defendant's liability." Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir.

28   2001), quoting Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997). Commonality

---

14

**MOTION FOR CLASS CERTIFICATION**

1  and typicality "tend to merge," such that factors that support a finding of commonality

2  also support a finding of typicality. *See* General Tel. Co. of Southwest v. Falcon, 457

3  U.S. 147, 157 (1982); In re United Energy Corp. Solar Power Modules Tax Shelter

4  Investments Sec. Litig., 122 F.R.D. 251, 256 (C.D. Cal. 1988).

5      Here, Ms. Cole's claims are plainly typical of those of the plaintiff class since

6  the claims of both Ms. Cole and the class arise from the same standardized sales pitch

7  and course of events and, as stated above, can be proven on a classwide basis.

8  Accordingly, Ms. Cole's claims satisfy the typicality requirement.

9  **4.    Adequacy**

10     The Ninth Circuit uses a two-factor test to determine whether a plaintiff and his

11  counsel will adequately represent the interests of the class: "(1) do the representative

12  plaintiffs and their counsel have any conflicts of interest with other class members, and

13  (2) will the representative plaintiffs and their counsel prosecute the action vigorously

14  on behalf of the class?" Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003);

15  Crawford v. Honig, 37 F.3d 485, 487 (9th Cir. 1995).

16  **a.    There Are No Conflicts of Interest**

17     It is obvious that there are no conflicts of interest between Ms. Cole and the

18  other members of the putative classes. She is a typical consumer,  and the transaction

19  she entered into with Defendants was likewise typical. There is absolutely nothing that

20  makes her interests adverse to those of the class. Likewise, Ms. Cole's counsel, the

21  Kick Law Firm, APC, has no conflicts of interest in this matter as they have never

22  represented any of the defendants. (Hess Decl., ¶ 31.)

23  **b.    Ms. Cole and Counsel Will Vigorously Litigate the Case**

24     It is also clear that Ms. Cole will vigorously prosecute this action.  Ms. Cole's

25  strength of character was dramatically tested - and proven – when Defendants made

26  an improper individual settlement offer to her in an attempt to "buy off" Ms. Cole and

27  prevent this motion for certification from being brought. On July 10, 2008, Defendants

28  made an attempt to buy Ms. Cole off as a lead plaintiff in this case by offering her

1   $10,000 personally. Hess Decl., ¶ 15, Exh. N. Then, when she would not be bought off,

2   shortly after her deposition Defendants doubled their unlawful offer to her, trying to

3   tempt her to abandon the putative class members with a settlement offer in the amount

4   of $20,000 – an amount obviously far in excess of the value of her individual claim.

5   Hess Decl., ¶ 16, Exh. O. Ms. Cole rejected this offer to be bought off even though it

6   would have been of personal benefit to her, and instead remained resolute to represent

7   the best interests of the class members rather than putting her own interest ahead of

8   theirs. Ms. Cole has also vigorously prosecuted this action for more than two years, and

9   has produced documents and sat for a deposition. Accordingly, there is no question that

10  she is an ideal class representative.

11      Ms. Cole's attorneys, The Kick Law Firm, APC, are likewise plainly qualified

12  to serve as class counsel. They are experienced class action attorneys who have been

13  appointed as class counsel in consumer class actions, and have vigorously prosecuted

14  this action for over two years and will continue to do so. (Hess Decl., ¶¶ 28 - 30.)

15      **B.      The Requirements of Rule 23(b)(3) Are Satisfied**

16      Finally, Fed.R.Civ.Proc. 23(b) requires that "the questions of law or fact

17  common to class members predominate over any questions affecting only individual

18  members, and that a class action is superior to other available methods for fairly and

19  efficiently adjudicating the controversy." Here, Ms. Cole's claims easily satisfy both

20  requirements of Rule 23(b)(3).

21      **1.      Common Questions Predominate Over Individual Questions**

22      The predominance test focuses on "the relationship between the common and

23  individual issues." Hanlon, 150 F.3d at 1022. Rule 23(b)(3) was intended to "cover

24  cases 'in which a class action would achieve economies of time, effort, and expense,

25  and promote . . . uniformity of decision as to persons similarly situated, without

26  sacrificing procedural fairness or bringing about other undesirable results.'" Amchem

27  Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997), quoting Fed. R. Civ. P. 23(b)(3)

28  Adv. Comm. Notes to 1966 Amendment). *See* Hubler Chevrolet v. General Motors

MOTION FOR CLASS CERTIFICATION

1  Corp., 193 F.R.D. 574, 580 (S.D.Ind. 2000) (satisfying Rule 23(b)(3) "merely requires

2  that the class claims have a dominant, central focus.  Satisfaction of this criterion

3  normally turns on the answer to one basic question:  is there an essential common

4  factual link between all class members and the defendant?")

5        Here, the common and individual issues are not just closely related – they are

6  identical, because all members of the misrepresentation class received the same

7  standardized sales pitch, and all members of the unlicenced sale and policy-switching

8  subclasses were sold insurance from an unlicensed agent and were switched to a new

9  policy *en masse*. So common questions predominate. For these reasons, class treatment

10  will clearly achieve judicial economy by avoiding a multiplicity of actions. There is

11  absolutely no reason to try Ms. Cole's claims separately from those of the class;

12  separate trials would be a pointless waste.

13        **2.**     **A Class Action Is Superior to Other Forms of Litigation**

14        Superiority is demonstrated where "classwide litigation of common issues will

15  reduce litigation costs and promote greater efficiency." Valentino v. Carter-Wallace,

16  Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). Rule 23(b)(3) sets forth factors for

17  determining whether "a class action [is] superior to other available methods for the fair

18  and efficient adjudication of the controversy." Fed. R. Civ. 23(b)(3)s explained by the

19  Ninth Circuit in Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180 (9th Cir. 2001),

20  "consideration of these factors requires the court to focus on the efficiency and

21  economy elements of the class action so that cases allowed under subdivision (b)(3)

22  are those that can be adjudicated most profitably on a representative basis."' Id. at 1190

23  (citation omitted). The Supreme Court has explained that the main purpose of the Rule

24  23(b)(3) class action is to vindicate "the rights of groups of people who individually

25  would be without effective strength to bring their opponents into court at all,"such as

26  those whose individual recoveries would be too small to warrant an individual suit.

27  Amchem Prods., Inc., 521 U.S. at 617.  *See* Hanlon, 150 F.3d at 1023.

28        Here, Asurion's cellular phone insurance is sold to consumers for a few dollars

1   per month. Accordingly, the consumers will not have a meaningful incentive to

2   prosecute individual claims, because "even if efficacious, these claims would not only

3   unnecessarily burden the judiciary, but would prove uneconomic for potential

4   plaintiffs. In most cases, litigation cost would dwarf potential recovery. In this sense,

5   the proposed class action is paradigmatic." Hanlon, 150 F.3d at 1019-1023.

6   **V.    IF THE COURT GRANTS CERTIFICATION IT SHOULD CONTINUE**

7           **THE TRIAL TO ALLOW TIME FOR NOTICE TO BE SENT OUT, OR**

8           **SEND NOTICE POST-TRIAL.**

9       Plaintiff anticipates that Defendants may try to argue that this motion is

10  untimely. Any such argument would be misplaced. As the Court will recall, as of

11  August 18, 2009, almost three years after this lawsuit was filed, Defendants had only

12  produced 131 pages of documents, severely impairing Plaintiff's ability to prosecute

13  the case. Much of the discovery necessary to this class certification motion was not

14  produced until very recently. The Court will also recall that Defendants insisted that

15  Plaintiff submit her individual claim to non-binding arbitration before the class claims

16  could proceed (and even tried to convince this Court that each individual putative class

17  member must submit to the non-binding arbitration individually before being allowed

18  to be a member of this class action.). That process took almost a year.

19      Delay alone is not a sufficient reason to deny an otherwise meritorious motion

20  for class certification. *See, eg.* Stolz v. United Brotherhood of Carpenters, 620 F.Supp.

21  396, 402 (D. Nev. 1985): "A delay in filing the motion alone will not be cause for

22  denial of certification."

23      If there is not enough time to give notice prior to the trial, the Court has the

24  authority to continue the trial date. In Snaur v. Snappy Apple Farms, 203 F.R.D. 281,

25  284 (W.D. Mich. 2001), the trial court continued the trial date after granting class

26  certification, even though the motion was not filed until two months after the discovery

27  cut off. Id. In this case the motion is being filed less than three weeks after the

28  discovery cut-off, and less than one week after this Court ruled it would not extend the

---

18

MOTION FOR CLASS CERTIFICATION

1  cut-off. The defendant in <u>Snaur</u> argued that the motion was untimely as it was brought

2  after the discovery cut-off. <u>Id.</u> at 289. The district court disagreed:

3      "This case will need to be rescheduled in light of the certification . . . the

4      certification of a Rule 23(b)(3) class . . . necessarily requires delay for

5      notification." (<u>Id.</u>)

6      The district court further noted that discovery had been "contentious" and that

7  "the completion of the discovery done to date was necessary and pertinent to the class

8  certification motion." <u>Id.</u> As this Court itself observed on December 3, 2009, not only

9  has discovery in this case also been "contentious," but the Court had very strong

10  feelings that it expressed at the hearing about which party was to blame for this.

11  Regardless, as in <u>Snaur</u>, Plaintiff here did not get discovery "necessary and pertinent"

12  to the class certification motion until late in the litigation, and here filed a class

13  certification motion far sooner after the discovery cut-off than the Plaintiffs in <u>Snaur</u>.

14      If the Court is not inclined to continue the trial date, the Court should order that

15  notice be sent out post-trial. Because Defendants have twice moved for summary

16  judgment, they have waived the right to insist that notice be sent prior to trial. *See*

17  <u>Postow v. OBA Federal Savings & Loan Assocation</u>, 627 F.2d 1370 (D.C. Cir. 1980).

18  **VI.    CONCLUSION**

19      For each of the foregoing reasons, it is respectfully submitted that this motion

20  should be granted.

21                                              Respectfully submitted,

22  Dated: December 20, 2009                    **THE KICK LAW FIRM, APC**

23                                              /s/ Matthew E. Hess

24                              By:    _____

25                                     Taras P. Kick, Esq.
                                       Matthew E. Hess, Esq.
                                       Thomas A. Segal, Esq.

26                                     Attorneys for Plaintiff,
                                       Wineesa Cole

27

28

19

MOTION FOR CLASS CERTIFICATION