Joseph Darrell Palmer (SBN 125147)
darrell.palmer@palmerlegalteam.com
Law Offices of Darrell Palmer
2244 Faraday Avenue, Suite 121
Carlsbad, CA 92008
Telephone: (858) 215-4064
Facsimile: (866) 583-8115

Attorneys for Objector Alexander Shakhnazaryan

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Wineesa Cole, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Asurion Corporation, a Delaware Corporation, Asurion Insurance Services, Inc., a Tennessee Corporation, T-Mobile USA, Inc., a Delaware Corporation, Liberty Mutual Insurance Company, a Massachusetts Corporation, and DOES 1 through 500,<br><br>Defendants.<br>_____ | Case No. 06-CV-6649-R (JCx)<br><br> Honorable Manuel Real<br><br>**OBJECTION OF ALEXANDER SHAKHNAZARYAN TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR**<br><br>Date: February 16, 2016<br>Time: 10:00 a.m.<br>Courtroom: 8<br><br> Action filed: October 18, 2006<br>Trial date: None Set |

Alexander Shakhnazaryan objects to the proposed settlement. Mr. Shakhnazaryan is a member of the class. Mr. Shakhnazaryan's address is in Glendale, California. For privacy reasons, Mr. Shakhnazaryan's personal information will not be provided at this time, but is available from his attorney upon request. Mr. Shakhnazaryan has filed a claim and his claim number is 600000611601.

Mr. Shakhnazaryan also gives notice of his counsel's intent to appear at the final approval hearing,

## I.   THE STANDARD FOR APPROVING A PROPOSED CLASS ACTION SETTLEMENT

A trial court must receive and independently consider information sufficient to assess the reasonableness of the settlement.   *Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 130, 133 (2008).  In *Kullar*, the Court of Appeal vacated a trial court's approval of a class action settlement because the court was not "provided with basic information about the nature and magnitude of the claims in question and the basis for concluding that the consideration being paid for the release of those claims represents a reasonable compromise." *Id.* at 133.  In *Clark v. American Residential Services LLC, et al.*, 175 Cal.App.4th 785 (2009), the Second Appellate District Court of Appeal reaffirmed that to evaluate the fairness of a settlement, the court should be provided sufficient information to make a determination as to the fairness of a settlement.

*Kullar* further explains that, despite a presumption of fairness for class action settlements negotiated at arm's length by counsel for the class, "'to protect the interests of absent class members, the court must independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interests of those whose claims will be extinguished.'" *Kullar, supra*, 168 Cal.App.4th at p. 130.

California courts have also held that the court has a duty, independent of any objection, to assure that the amount and mode of payment of attorneys' fees in a class action settlement are fair and proper, and may not act as a rubber stamp for the parties' agreement.  *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545 (2009).

## II.   ARGUMENT

### A.  Notice is Inadequate

Class Counsel's Notice, does not inform Class Members of either the nature of the legal rights they are releasing or the remedies available for violations of those legal rights.  The Notice merely states "[t]he lawsuit alleges that Asurion and T-Mobil offered and sold cellular telephone insurance without adequately disclosing certain terms of the insurance policy."  The description of the release is similarly uninformative.  The Notice states that under the Settlement, Class Members "will not be able to sue or

continue to sue Asurion or T-Mobil as part of any other lawsuit involving the claims made in this lawsuit and resolved by this settlement." The Notice does state that the full terms of the release are located on the Settlement Website.  However, the terms within Section 15 of the Settlement Agreement and Release are not any better.  For example, the Release includes tort claims, but the language is buried within legalese.  The Release states as follows:

> Class Members, including their respective predecessors, successors, assigns, devisees, relatives, heirs, legatees, insurers and agents, whether past, present or future, hereby release and forever discharge Defendants, along with every other person and entity, named or unnamed, that ever was or could have been a defendant in the Action (collectively, the "Defendant Releases"), and all of the Defendant Releasees' respective predecessors, successors, parents, subsidiaries, divisions, employees, affiliates, assigns, officers, directors, shareholders, representatives, attorneys, insurers and agents, whether past, present or future, from and and all charges, complaints, claims, debts, liabilities, demands, obligations, costs, expenses, actions, and causes of action of every nature, character, and description, whether known or unknown, asserted or unasserted, suspected or unsuspected, fixed or contingent, which Named Plaintiff and Class Members who do not opt out of this Agreement made, could have made, or in any way arise out of any allegations that were or could have been made by any Class Member concerning alleged wrongdoing during the class period (consistent with class definition) in the Action.

Said Release is way too broad. For example, the Release contends to Release Class Member's relatives, one cannot release claims for another without their consent and knowledge.  Further, the Operative Complaint or any Complaint are not accessible to Class Members so they are left in the dark as to the exact claims they are releasing.

Class Members are not informed that some of the alleged violations may subject the Defendant for penalties for up to $2,500 per violation, plus other liabilities.  The Notice and Settlement Agreement fail to inform the Class Members that there are different standards for some of the alleged violations where the Class Member is 65 or older or disabled.

The Settlement Website is inadequate, because it fails to provide information Class Members need to evaluate the Settlement.  Class Counsel have not identified the operative Complaint.  Identifying which Complaint is the Operative Complaint would inform Class Members about what claims they are releasing.  Instead they can only speculate, which is unacceptable. Even more alarming is the fact that the Notice does not even provide an estimated amount of recovery for the Class Members.

**B.  The fee request creates a conflict**

The 1.9 million dollar fee request is ***much*** larger than the recovery a Class Member *may* receive. The benefit is truly unknown, but it is at least known that the Class Members are not to receive more than $124.  The Settlement Fund is to be 4.2 million dollars.  The requested attorneys' fees are 1.9 million dollars and an extra $223,061.41 in expenses.  The named Plaintiff has requested $5,000 as a service award.  The Claims Adjuster has requested an amount not to exceed $486,000.  The estimated amount of potential Class Members is 1,104,763 individuals (although only approximately 20,000 have made a claim, which proves the Notice has been ineffective).  The Net Settlement fund will only be able to provide $1.43 for each Class Member.  Even assuming that no more Class Members made a claim, which would be alarming and highlight ineffective procedure of Notice, each Class Member would receive an estimated $78, which is way below the service award and Class Counsels' fees.  Even among this special bar, this is a brazen request.  The court must call a foul because even in this game, asking for such an amount where the client's recovery is unknown is against the rules.

The attorneys base their outsize fee request on their work to protect an important public right. The purpose of the unfair competition law is to protect both consumers and competitors from unlawful, unfair or fraudulent business practices by promoting fair competition in commercial markets for goods and services.  West's Ann. Cal. Bus. & Prot. Code § 17200.  The UCL's purpose is to protect both consumers and competitors from unlawful, unfair or fraudulent business practices "by promoting fair competition in commercial markets for goods and services." *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 949 (2002). Unquestionably, fair business practices are important and deserve protection.

Class Counsel's claim it's fee request is "fair and reasonable" and "through arms-length negotioan[ed]."  Claiming the fees were negotiated separately is no Chinese wall; the settlement benefits and the attorneys' fees must be considered part of a common fund.  Each of the benefits offered with the Settlement, including attorneys' fees, form part of a "constructive common fund." *See, e.g., Dennis v. Kellogg Co.*, 697 F.3d 858, 862-63 (2012) (evaluating a "constructive common fund" settlement).  *See also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768 (1995). "Although class counsel and GM contend (and the district court believed) that the fee was a separate agreement, thus superficially resembling the separate awards in statutory fee cases, private agreements

to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case." *Id.*, at 821. *Accord. Johnson v. Comerica*, 83 F.3d 241 (1996) ("[I]n essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represent a package deal.").

Although California courts routinely use the lodestar method to analyze fee awards, they also acknowledge the lodestar method is subject to abuse. These abuses were acknowledged in *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 40 (2000). In *Lealao* the court analyzed the history of the lodestar method, citing THIRD CIRCUIT TASK FORCE, COURT AWARDED ATTORNEY FEES (1985) 108 F.R.D. 237, 246-249, ("the Report of the Third Circuit Task Force concluded the lodestar technique is a "cumbersome, enervating, and often surrealistic process of preparing and evaluating fee petitions that now plagues the Bench and Bar" (*Id.* at p. 258), and recommended a return to the percentage of the recovery fee formula in cases involving a settlement fund).

*Lealao* did not suggest discontinued the lodestar method to determine fees but it said "courts must vigilantly guard against the lodestar's potential to exacerbate the misalignment of the attorneys' and the class's interests." *Id., quoting* John Coffee, Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class & Derivative Actions, 86 COLUM. L.REV. 669, 691 (1986) (observing "As one commentator has stated, '[b]y severing the fee award from the settlement's size, [the lodestar] formula facilitates the ability of defendants and the plaintiff's attorneys to arrange collusive settlements that exchange a low recovery for a high fee award.. . .'). *Accord.* Charles Silver, Due Process and the Lodestar Method, 74 TUL. L. REV. 1809, 1839 (2000) (such a fee arrangement is "a strategic effort to insulate a fee award from attack").

California courts can and should cross check the lodestar against the benefit obtained for the Class. *Lealao* held "in cases in which the value of the class recovery can be monetized with a reasonable degree of certainty and it is not otherwise inappropriate, a trial court has discretion to adjust the basic lodestar through the application of a positive or negative multiplier where necessary to ensure that the fee awarded is within the range of fees freely negotiated in the legal marketplace in comparable litigation." *Lealao*, 82 Cal.App. at 50 (observing "As we have said, the California Supreme Court has never prohibited adjustment of the lodestar on this basis. Due to the complexity of the judicial

responsibility to structure a class action fee award providing counsel the optimum mix of incentives and disincentives, and the variety of different and sometimes competing considerations that may come into play (*see* Hay, Asymmetric Rewards: Why Class Actions (May) Settle for Too Little, 48 HASTINGS L.J. 479 (1997)), trial judges need the flexibility Serrano III provides, as it enables them to relate fee awards to the economic realities that determine the efficacy of the private enforcement contemplated by our civil justice system.)  *See also see Serrano v. Priest,* 20 Cal.3d 25, 49 (1977).  *Accord. Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (the lodestar "may be adjusted upward or downward to account for several factors including ... the benefit obtained for the class").

   *Lealao* explained that "An adjustment reflecting the amount of the class recovery is not significantly different from an adjustment reflecting a percentage of that amount; and California courts have evaluated a lodestar as a percentage of the benefit."  As an example, the court cited *Glendora Community Redevelopment Agency v. Demeter,* 155 Cal.App.3d 465 (1984).  In *Glendora*, the court awarded a 25 percent contingency amount.   The Court of Appeal affirmed, concluding a fee award under the statute may be made on the basis of a contingent fee agreement where the trial court considered other factors in determining the fee was reasonable.   The trial court's finding the 25 percent figure was reasonable relied in part on the California Rules of Professional Conduct. Rule 2-107 set forth nine factors that could be considered in determining the reasonableness of a fee, one of which was " '[t]he amount involved and the result obtained.' " 155 Cal.App.3d at p. 474.

   Here, the results are unknown.  CAFA requires a district court to base "the portion of any attorney's fee . . . attributable to the award of coupons" on "the value to class members of the coupons that are redeemed." 28 U.S.C. §1712(a).  Even that value would have to be looked at with skepticism. As the court in *Chavez v. Netflix* observed, "In a pure coupon settlement, the class members would receive a coupon, voucher, or discount that . . . might induce the member to make a purchase he or she would not otherwise have made, which may produce a net benefit for the defendant."   Here the Class Members are to receive a check that expires within half a calendar year.

   Class counsel should receive only 25% of the amounts redeemed by the class, reduced to wholesale value.  See *Lealao,* 82 Cal. App. 4th 19, at fn. 1 (citing several decisions and observing "Studies show that this benchmark is within the range followed by most courts. *See, e.g.,* Lynk, The

Courts and the Plaintiffs' Bar: Awarding the Attorney's Fee in Class–Action Litigation, 23 J. LEGAL STUDIES 185, 208 (1994); Newberg & Conte, ATTORNEY FEE AWARDS (2d ed.1993), pp. 50–53.

Further, Class Counsel is to receive their fees before the case is to be perfect upon appeal. However, if the Settlement Agreement is not upheld then Class Counsel is to return their fees, but no interest is to be charged and would equate to an interest free loan.  The Service Award is also to be received before the case is to be perfect upon appeal.  Class Members will not receive their benefit, if any, well after everyone else involved is to be paid and this is unfair.

Further, there is a clear-sailing agreement in that the Defendants have agreed not to object to the Attorneys' fees requested.  California courts have also held that the court has a duty, independent of any objection, to assure that the amount and mode of payment of attorneys' fees in a class action settlement are fair and proper, and may not act as a rubber stamp for the parties' agreement.  *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545 (2009).  The Court should decline to grant final approval to this proposed class action settlement. Class counsel seek to reap over one million dollars in fees while keeping class members in the dark as to the existence of their so-called "clear-sailing" agreement. *In re Bluetooth Headset Products Liab. Litig.,* 654 F.3d 935, 947 (2011). Here, the Defendant agreed not to oppose an attorneys' fees application of up to $1.9 million dollars.  Defendant and Class Counsel knew that Defendant's payout would be the same no matter how high Class Counsel's fees were.  As a result, both sides had an incentive to make the fee large enough to induce Plaintiff's counsel to sacrifice class interests.

Further, the incentive awards are excessive.  Incentive awards of $5,000 for the class representative is excessive.  It is 40 times the cap amount that Class Members can receive.

California courts have followed the analysis recommended in some federal court cases in rejecting incentive awards out of keeping with the recovery achieved for unnamed class members.  In *Clark v. American Residential Services LLC*, et al., *supra*, the court rejected an incentive award that was 44 times the amount the average class member would receive.  In *Clark*, the court considered the factors looked at in *Cook v. Niedert,* 142 F.3d 1004, 1016 (1998).  Those factors included "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'"

Objection of Alexander Shakhnazaryan to Proposed Settlement and Notice of Intent to Appear

*Clark*, 175 Cal. App. 4th at 804, *citing Cook, ibid*.  *Cook* also pointed to other factors identified in federal cases, including "the risk to the class representative in commencing suit, both financial and otherwise," "the notoriety and personal difficulties encountered by the class representative," "the duration of the litigation", and "the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation."  *Clark*, at 804, *citing Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (1995).  The court also rejected conclusory statements regarding the effort the class representative put into the litigation.  Although Class Counsel recite in boilerplate fashion the efforts made by class representatives in furtherance of the litigation, their declarations are unpersuasive and repetitive.  The court should not just rubber stamp these service awards.

## III.   JOINDER IN OTHER OBJECTIONS

Mr. Shakhnazaryan  joins in, adopts and incorporates by reference as though fully stated herein each objection by other class members which are not inconsistent with these objections.

## IV.   CONCLUSIONS

For the foregoing reasons and all others at oral argument, these objectors request that the court sustain their objections and grant the following relief:

- Upon proper hearing, sustain these Objections.
- Upon proper hearing, enter such Orders as are necessary and just to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement.

Dated:  January 26, 2015                    By: /s/ Joseph Darrell Palmer
                                                       Joseph Darrell Palmer
                                       Attorney for Objector Alexander Shakhnazaryan

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2016, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Central District of California by using the USDC CM/ECF system.

I certify that all participants in the case who are registered CM/ECF users that service will be accomplished by the USDC CM/ECF system.

I further certify that the following participant will be served on this day via U.S. mail, postage prepaid:

Claims Administrator
Asurion Lawsuit Administration Center
P.O. Box 30197
College Station, TX 77842


　　　　/s/ Joseph Darrell Palmer　　
Joseph Darrell Palmer
Attorney for Objector

Objection of Alexander Shakhnazaryan to Proposed Settlement and Notice of Intent to Appear